UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION



| | | |
|---|---|---|
| LINDA A. TURNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-096-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION

Plaintiff Linda A. Turner seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

### I. Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only

if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A), 42 U.S.C. § 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911 (2005).

A district court's role in reviewing Social Security appeals is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## II. <u>Statement of the Issues</u>

Turner contends that the Administrative Law Judge (ALJ) failed to consider all the evidence in the record regarding her mental impairments as required by Social Security Rulings; that the ALJ did not properly determine her Residual Functional Capacity (RFC); and that the ALJ erred in accepting the testimony of the vocational expert and, therefore, failed to establish that she can engage in work that exists in the national economy.

## III.   Discussion

### A.   *The ALJ's evaluation of the evidence and his RFC finding*

In arguing that the ALJ did not consider all the evidence regarding her mental impairments, Turner specifically cites a portion of Ruling 85-16p which provides that "it is the responsibility of [all reviewers in the Social Security Administration's review process] to identify the pertinent evidence from medical and non-medical reports and to make findings as to the individual's ability to perform work-related activities (RFC)." S.S.R. 85-16, 1985 WL 56855 at *2.

In this case, the ALJ complied fully with Ruling 85-16. The ALJ (1) identified the pertinent evidence from the record related to Turner's mental impairments and (2) made findings as to her ability to perform work-related activities. In meeting his obligation to identify evidence, the ALJ noted that: Priya Khandheria, M.D., an agency examining physician, examined Turner and assessed her mental/psychological condition in early summer 2003 (Tr. 11; *see* Tr. 173); Turner was treated for her mental impairments at West Texas Centers for Mental Health and Mental Retardation (West Texas MHMR) from June 2004 until September 2004 (Tr. 12; *see* Tr. 229-48); State agency physicians assessed Turner's mental functional limitations (Tr. 12; *see* Tr. 190-210); and Turner testified regarding her psychological conditions and limitations (Tr. 12).

The ALJ then made findings as to Turner's ability to perform work-related activities. He found that her mental impairments caused mild restrictions in her daily activities and

3

social functioning, and moderate deficiencies in her concentration, persistence, and pace, and that she had not experienced episodes of decompensation. (Tr. 12.) Based on these findings he determined that Turner's mental impairments did not prevent her from working but that they restricted her to work that involved only the lower end of detailed instructions. (Tr. 12-13.) The ALJ's analysis therefore complied with the requirements of Ruling 85-16 and the Commissioner's regulations. *See* 20 C.F.R. §§ 416.920a(c), 416.945(c).

Turner also complains of the ALJ's determination that Dr. Khandheria's examination notes were not entitled to controlling weight, pointing out that Dr. Khandheria assigned her a Global Assessment of Functioning (GAF) score of 60.[1] She also contends that the ALJ did not adequately evaluate records from MHMR which include a GAF score of 50.

In regard to Dr. Khandheria's report, the ALJ noted that Dr. Khandheria indicated that Turner's prognosis was extremely guarded and that she did not seem "to be responding to treatment." (Tr. 12, 175.) However, he also noted that Turner had reported to Dr. Khandheria that she was not receiving treatment at all. (Tr. 12, 173.) Dr. Khandheria's notes were therefore inconsistent; thus, there was good cause for the ALJ to determine that her opinions were not entitled to controlling weight. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Further, although the ALJ did not assign controlling weight to all of

---

[1] A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV). A GAF score of 60 indicates that an individual has moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

Dr. Khandheria's opinions, nothing in Dr. Khandheria's records conflict with the ALJ's determination that Turner experienced only mild restrictions in her daily activities and social functioning and moderate deficiencies in her concentration, persistence, and pace. Dr. Khandheria's report indicates that Turner was capable of sustaining daily activities; that she was socially functional; that she was able to concentrate "fairly well"; that her mood was euthymic and affect appropriate, her insight was good, and her judgment was intact; that she was oriented to time, place, and person; and that her general knowledge was fair and her intelligence appeared to be average. (Tr. 174-75.)

In regard to the evidence from MHMR, the ALJ noted that Turner experienced situational depression at that time that was attributed to problems she was having with her husband. (Tr. 12; *see* Tr. 231, 242, 246.) The ALJ was correct. Ernesto Fernandez, M.D., a physician at MHMR, assigned Turner a GAF of 50 on June 14, 2004, but also determined that her GAF for the previous year had been $80^2$ and noted that she suffered from "psychosocial stressors, moderate, from marital discord and an abusive husband." (Tr. 246.) Thus, the ALJ did not err in finding that Turner's depression was situational. In addition, nothing in the evidence from MHMR or Dr. Fernandez' notes contradict the ALJ's determinations. Dr. Fernandez noted that although Turner had taken antidepressant medications in the past, she had not taken medication "for some time." (Tr. 245.) Further,

---

[2] A GAF score of 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning while a GAF score of 80 indicates a situation in which, if present, symptoms would be transient and expected reactions to psychosocial stressors and that such individual would have no more than slight impairment in social, occupational, or school functioning. *Id.*

although Turner reported that she was "real nervous and angry all the time" and experienced difficulty sleeping at night, Dr. Fernandez found that she was well-oriented and that her grasp of general knowledge was good, that her judgment and insight were good, and although she talked excessively, her speech was well-organized and relevant. (Tr. 245-46.)

The ALJ's analysis of the evidence from Drs. Khandheria and Fernandez was correct. Further, his determination that Turner's mental limitations did not preclude her from working and that she would perform work that was restricted to that involving only the lower end of detailed instructions is supported by substantial evidence. Therefore, his determination is conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173-74 (5th Cir. 1995).

Finally, the ALJ's other determinations regarding Turner's RFC are supported by substantial evidence. The ALJ found that Turner was capable of light work limited by the need for jobs that allow frequent opportunities to sit and stand while working, that do not involve excessive dust or fumes, and that are performed at the lower end of detailed instructions. (Tr. 13.) The evidence shows that Turner suffers from advanced degenerateve changes in her right ankle, mild osteoarthritis, and bronchial problems including low lung capacity, as well as other conditions that are intermittently exacerbated. (Tr. 115-17, 136, 148, 152, 156, 213, 215.) However, upon treatment, physicians have repeatedly noted that other than the exacerbating symptoms, Turner's other systems are within normal limits. (*See* Tr. 121, 126, 136, 189.) Based on the medical evidence as well as Turner's statements in administrative documents, there is substantial evidence that she can do limited light work as the ALJ found. (*See id.*; Tr. 64–69.)

B.   *The ALJ's reliance on testimony offered by the vocational expert*

The vocational expert testified that based on Turner's physical and mental limitations identified by the ALJ and on vocational and demographic factors, Turner could perform the jobs of silverware wrapper, folding machine operator, and small products assembler and that these jobs existed in significant numbers in the national economy. (Tr. 14, 264-65.)

Turner argues that the jobs identified by the vocational expert do not provide substantial evidence that there are jobs in the national economy that she can perform. First, she contends that the job of silverware wrapper is unrecognized in the Dictionary of Occupational Titles (DOT) or does not exist. However, the DOT identifies the job of silverware wrapper as number 318.687-018 and characterizes it as light work. *See* Dictionary of Occupational Titles, Service Occupations, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM (last visited on January 25, 2006).

Turner next argues that the job of folding machine operator is defined in the DOT as requiring the ability to perform medium rather than light work. Again, Turner is mistaken. In the DOT, the job of small products assembler has a physical demand/strength requirement of "light." *See* Dictionary of Occupational Titles, Benchwork Occupations, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07A.HTM (last visited on January 25, 2006).

Next, Turner contends that the DOT indicates that the jobs of folding machine operator and small products assembler require a reasoning level of two which requires a worker to

7

apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Turner is correct. However, the ALJ determined that Turner could perform jobs that require only the lower end of detailed instructions. Thus, there is no conflict between the ALJ's RFC finding and the requirements of small products assembler and folding machine operator, and there is no evidence in the record that Turner cannot perform the reasoning requirements of the jobs.

Finally, Turner argues that the DOT's definition of small products assembler indicates that an individual restricted to the lower end of detailed instructions would have difficulty performing the job. The DOT defines the duties of small products assembler as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

*See* Dictionary of Occupational Titles, Benchwork Occupations, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07A.HTM (last visited on January 25, 2006).

Although the DOT's actual definition of small products assembler may be long and detailed, there is nothing in the definition that indicates that the job is highly detailed or would preclude a worker who is capable of work involving only the lower end of detailed instructions from performing the job. The definition describes several different processes that a worker must perform in combination and at different times rather than simultaneously. In short, the DOT's definition of small products assembler does not indicate that it would require highly detailed instructions and this conclusion is supported not only by the definition cited above but also by the DOT's description of the work as that requiring only level two reasoning.

A vocational expert (VE) is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir.1995) (citing *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986)). Thus, the ALJ may rely upon the expertise of a vocational expert in determining complex issues, such as whether a claimant's work skills can be used in other occupations and the specific occupations in which they may be used. 20 C.F.R. § 416.966(e). Turner has not identified any direct conflict between the vocational expert's testimony and the data in the DOT and has not identified any tasks in the identified jobs that she is incapable of performing or that otherwise conflict with the ALJ's RFC determination. Therefore, the ALJ's reliance on the vocational expert's testimony provides substantial evidence that Turner can perform jobs that exist in substantial numbers in the national economy. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000).

## IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Turner's appeal with prejudice.

## V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: February 21, 2006.

_____
NANCY M. KOENIG
United States Magistrate Judge